UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
KACEY KLONSKY,                        :
on behalf of herself and all          :
others similarly situated,            :
                                      :
            Plaintiff,                :
                                      :
       v.                             :   Case No. 2:11-CV-250
                                      :
RLI INSURANCE COMPANY,                :
                                      :
            Defendant.                :
```

**OPINION and ORDER**

Plaintiff Kacey Klonsky filed suit on behalf of herself and all others similarly situated, who have had their rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, violated by Defendant RLI Insurance Company ("RLI"). RLI has moved to dismiss Klonsky's claim on two grounds: "(i) the motor vehicle report ("MVR") pertaining to Kacey Klonsky is not a 'consumer report' within the meaning of the FCRA . . . and (ii) Kacey Klonsky's FCRA claim against RLI is barred by the release provisions of settlement documents entered into in connection with a prior action" between RLI and her parents." Def.'s Mem. 1, ECF No. 7.

For the reasons that follow, RLI's motion to dismiss is DENIED.

**FACTUAL BACKGROUND**

The following facts were gleaned from the Class Action Complaint ("Complaint"), and from the MVR.  In November 2008 Arthur Klonsky struck a pedestrian with his automobile, causing the pedestrian serious injury.  Arthur's wife, Jane Klonsky, was a passenger in the car at the time.

Before the accident, RLI had issued Arthur Klonsky a personal umbrella liability policy that included automobile liability coverage.  As a result of the accident, the pedestrian presented a claim against Arthur and Jane Klonsky to RLI.  This claim eventually resulted in litigation between RLI and Arthur and Jane Klonsky.  That litigation was settled pursuant to a confidential agreement.

Arthur and Jane Klonsky have a daughter, Kacey Klonsky.  At the time of the issuance of her father's RLI policy, Klonsky was a resident of the household of her parents, and was insured under the policy.  However, because she was not involved in the accident, no claim related to the accident was ever presented against her.  Moreover, she was in no way involved in the litigation between her parents and RLI.

Nonetheless, as part of the investigation of the claim against Klonsky's parents, in February 2009, RLI obtained an MVR for Klonsky from a consumer report vendor.  Klonsky alleges that RLI engaged in a practice to always check the driving records of

all insured drivers on an insurance policy when a claim was submitted against one or more insureds.  Klonsky further alleges that the insureds are not informed that the records will be obtained and do not provide consent.

The MVR at issue here contains some of Klonsky's basic identifying information, such as her name, date of birth, and driver's license number.  It also contains a section entitled "Driving Record History," which indicates that Klonsky has a "clear record."  Klonsky did not consent to RLI obtaining this report.  Moreover, she alleges that "RLI certified to [the consumer report vendor] that it was obtaining the driving record solely for underwriting purposes," but in fact obtained the report in an attempt to determine if misrepresentations were made on the application for her father's umbrella policy.  (Complaint ¶¶ 25, 27, 29.)  In sum, Klonsky alleges that RLI obtained her MVR and the MVRs of others similarly situated for an impermissible purpose, in violation of the FCRA.

**DISCUSSION**

**I. Motor Vehicle Reports as "Consumer Reports" under the FCRA**

"The FCRA regulates access to individuals' consumer reports," and "[a]n entity may gain access to an individual's consumer report only with the written consent of the individual, unless the consumer report is to be used for certain permissible

purposes." *Dixon v. Shamrock Fin. Corp.*, 522 F.3d 76, 77-78 (1st Cir. 2008) (citing 15 U.S.C. § 1681b) (internal quotation marks omitted). Klonsky has alleged that RLI obtained her MVR for an impermissible purpose, and thus violated the FCRA. RLI argues that Klonsky's MVR is not a "consumer report" within the meaning of the FCRA, and thus, that she has no claim under the FCRA.

> The FCRA defines a consumer report as
>
> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [sic], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). Thus, to qualify as a consumer report, Klonsky's MVR must "'bear on' at least one of seven factors and . . . be used, expected to be used, or collected for one of three types of purposes." *Trans Union Corp. v. FTC*, 81 F.3d 228, 231 (D.C. Cir. 1996).

RLI concedes that "Klonsky's Complaint alleges facts that arguably satisfy the [second] half of the definition." Def.'s Mem. 8 (citing Complaint ¶¶ 25-26.). That is, Klonsky alleges that RLI certified that it was collecting her MVR for

4

underwriting purposes, and thus that her MVR was "used, expected to be used, or collected for" one of the three permissible purposes.  The question becomes, then, whether Klonsky's MVR "bear[s] on [her] credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."

    As this Court has observed, "MVRs are considered to be consumer reports when they are sold by state motor vehicle departments for insurance underwriting purposes and contain information bearing on a consumer's 'personal characteristics,' such as arrest information."  *RLI Ins. Co. v. Klonsky*, 771 F. Supp. 2d 314, 333 (D. Vt. 2011) (citing 16 C.F.R. Pt. 600, App. § 603(d)(4)(C)); *Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1095 (5th Cir. 1992) (noting that the FTC has interpreted the FCRA to apply to MVRs).  While the FTC's interpretation of the FCRA does not have the force of law, it should be viewed in light of the fact that the Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  Based on the FTC's interpretation of the FCRA, and on a plain-language reading of the statute, Klonsky's MVR qualifies as a consumer report.

5

Klonsky's MVR provides her date of birth, driver's license number, license "class," and license expiration date. It also provides Klonsky's "driving record history" and states that she has a "clear record." The information that Klonsky has a clear driving record bears directly on her "personal characteristics." Specifically, it speaks to her competence and responsibility as a driver. Thus, it is a consumer report under the FCRA.

In support of its argument that Klonsky's MVR is not a consumer report, RLI cites to cases that hold that reports containing only basic identifying information (such as name, date of birth, address, and social security number) are not consumer reports within the meaning of the FCRA. *See* (RLI Ins. Co.'s Mem. of Law in Support of its Mot. to Dismiss 12.) (citing *Smith v. Waverly Partners, LLC*, 2011 WL 3564427, *5 (W.D.N.C. Aug. 12, 2011); *Individual Reference Svcs. Grp., Inc. v. Fed. Trade Comm.*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001)). Those cases are inapposite because the MVR at issue here contains information beyond basic identifying information—it contains information about Klonsky's driving history.

Additionally, RLI argues that Klonsky's MVR is not a consumer report because it lacks "arrest information or other information warranting an analogous level of societal disapproval." (RLI Ins. Co.'s Mem. of Law in Supp. of its Mot. to Dismiss 12.) (quoting *Manso v. Santamarina & Assocs.*, 2005 WL

6

975854, at *8 (S.D.N.Y. Apr. 26, 2005)) (internal quotation marks omitted).  Relying on FTC commentary, *Manso* discussed MVRs as consumer reports and suggested that "a motor vehicle is a consumer report bearing on personal characteristics only in cases such as those when the report refers to an arrest for drunk driving, as opposed to those in which a report refers to a less serious offense such as speeding."  *Manso*, 2005 WL 975854, at *8 (internal quotation marks omitted).

Of course, the FTC commentary on which *Manso* relied can also be read to support the proposition that minor offenses such as speeding bear on personal characteristics in the same way that more serious offenses do.  Moreover, the Court notes that that the *absence* of arrests for speeding, drunk driving, or other moving violations bears as much on the personal characteristics of a driver as would the presence of such arrests.  It is logically inconsistent to argue that an MVR which displays an arrest for drunken driving says something about an individual's personal characteristics, while simultaneously arguing that an MVR which shows an absence of such arrests says nothing about an individual's personal characteristics.

Because Klonsky's MVR was ostensibly obtained for underwriting purposes, and because the MVR's indication that Klonsky has a clear driving record bears on her personal

7

characteristics, the MVR is a consumer report within the meaning of the FCRA.

**II. The Application of the Releases in the Prior Action**

RLI also argues that Klonsky's claim should be dismissed because it is barred by the Confidential Settlement Agreement and the supplemental Mutual Release ("Releases") entered into by her parents and RLI in their prior litigation.

Basic principles of contract law dictate that Kacey Klonsky is not bound by the Releases in this matter. "It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Moreover, "[s]ettlement agreements are not to be used as a device by which A and B, the parties to the decree, can (just because a judge is willing to give the parties' deal a judicial imprimatur) take away the legal rights of C, a nonparty." *Davis v. Blige*, 505 F.3d 90, 102-03 (2d Cir. 2007) (quoting *Bacon v. City of Richmond*, 475 F.3d 633, 643 (4th Cir. 2007)) (internal quotation marks omitted). Klonsky was neither a party to the prior litigation, nor to the Releases.

RLI argues, however, that Klonsky's claim is barred "because she was a third-party beneficiary under the personal umbrella liability policy . . . that RLI issued to [her parents]," and "[a]s a third-party beneficiary under the policy, [Klonsky's] rights cannot exceed those of her parents, the named

8

insureds." Def.'s Reply Mem. 9, ECF No. 21.  RLI states that Klonsky "cannot credibly argue that her FCRA claim does not depend on the insurance policy in connection with which RLI obtained her MVR in the first place." *Id*. 9-10.  True, RLI likely never would have obtained Klonsky's MVR were she not a third-party beneficiary of her parents' insurance.  However, her claim here does not in fact depend on the policy.  It depends on RLI's actions, and on the FCRA.  Klonsky does not seek to enforce rights bestowed by the policy, she seeks to enforce rights bestowed by the FCRA.

Because basic principles of contract law dictate that the Releases do not bind Klonsky, and because Klonsky's status as a third-party beneficiary to her parents insurance does not change that facts, the Releases do not bar Klonsky's claim.

**CONCLUSION**

For the reasons set forth above, RLI's motion to dismiss is DENIED.

Dated at Burlington, Vermont this 4th day of April, 2012.

/s/ William K. Sessions III\_
William K. Sessions III
District Judge